```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                   MIDDLE DISTRICT OF PENNSYLVANIA


CURTIS T. McCOY,                      :
                                      :
         Petitioner                   :
                                      :
    v.                                :   CIVIL NO. 3:CV-04-1595
                                      :
PENNSYLVANIA BOARD OF PROBATION       :   (Judge Conaboy)
AND PAROLE, ET AL.                    :
                                      :
         Respondents                  :
```
_____

## **MEMORANDUM AND ORDER**
## **Background**

Curtis T. McCoy, an inmate presently confined at the State Correctional Institution, Huntingdon Pennsylvania ("SCI-Huntingdon"), initiated this pro se petition for writ of habeas corpus. Named as Respondents are the Pennsylvania Board of Probation and Parole ("Parole Board"); SCI-Huntingdon Warden J. Grace and the Attorney General of Pennsylvania. Service of the petition was previously ordered.

Petitioner pled guilty to three counts of rape and one count of robbery in the Chester County Court of Common Pleas.[1] As a result, he is presently serving a 17½ to 40 year term of

---

[1] Respondents note that Petitioner was previously convicted of rape, robbery, and escape in the State of Florida. As a result of those convictions, a Florida state parole violation detainer has been lodged against McCoy.

1

imprisonment.  McCoy states that as of the filing of this petition he has been incarcerated for over twenty (20) years, successfully completed sex offender and substance abuse programs, and has been recommended for parole by the Pennsylvania Department of Corrections.

McCoy's present petition initially contends that the Parole Board violated due process because on at least two separate occasions he was denied parole based on "the cryptic statement that it [had] determined 'that the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved though [his] release on parole." Doc. 1, ¶ 9.

Petitioner next claims that the Parole Board violated the Ex Post Facto Clause in denying him release on parole. Specifically, McCoy argues that changes regarding the number of persons required to sit on a parole review panel; internal guidelines form; and the 1996 amendments to the Pennsylvania parole statute which were applied in his case constituted ex post facto violations.  See id. at ¶ 8.

Respondents seek dismissal of the petition on the grounds that McCoy failed to fully exhaust his available state court remedies.  Alternatively, they maintain that the actions taken by the Parole Board did not constitute either an ex post facto nor a due process violation.  Also pending is Petitioner's motion to supplement the record and to compel production of documents.  See Doc. 34.

## Discussion

### I. Motion to Supplement and Compel Production of Documents

In his motion Petitioner states that on August 30, 2005 he was again considered for, and denied release by the Parole Board. His motion asks that the record of this matter be supplemented to include review of the Parole Board's latest written decision which is attached to his motion as Exhibit A. McCoy's request will be granted and the Parole Board's August 30, 2005 decision will be considered by the Court.

McCoy's motion also seeks an order compelling the Respondents to produce copies of any reports, assessments, evaluations which they relied upon in denying his parole application. Since a decision regarding Petitioner's present claims can be made without consideration of the documents listed by McCoy, this portion of his motion will be denied.

### II. Exhaustion

As a threshold matter, a habeas petitioner must either show that the federal constitutional claims asserted in the federal habeas petition have been "fairly presented" to the state courts, or that there is an absence of available state court corrective process, or that circumstances exist rendering the available state court process ineffective to protect the

3

petitioner's rights. See 28 U.S.C. § 2254(b).[2]

In his petition, McCoy acknowledges that he previously filed a petition challenging an April 19, 2002 Parole Board decision with the Commonwealth Court of Pennsylvania. See Doc. 1, ¶ 6. Petitioner adds that a Pennsylvania state habeas corpus petition cannot be employed to challenge a Parole Board decision. See id. at ¶ 13.

Since the filing of this Petition and submission of the response there have been important federal and state case law developments in the area of when, and if, a Pennsylvania state prisoner must seek state court review of a denial of parole. Specifically, in January of 2005, the Third Circuit Court of Appeals in Defoy v. McCullough, 393 F3d 439, 445 (3d Cir. 2005), held that a state prisoner challenging the denial of parole on constitutional grounds, other than for a violation of the ex post facto clause, was not required to exhaust state court remedies before pursuing federal habeas review. Almost exactly

---

[2] Section 2254(b)(1) of title 28 U.S.C. provides:

> (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that --
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

4

one month later, the Pennsylvania Supreme Court decided <u>Cimaszewski v. Bd. of Prob. & Parole</u>, 868 A.2d 416, 427 (2005), which expressly overruled <u>Finnegan v. Bd. of Prob. & Parole</u>, 576 Pa. 59, 838 A.2d 684 (2003) to the extent that the Pennsylvania Court now recognizes that an ex post facto claim may arise from the application of the 1996 amendments to an applicant convicted prior to the enactment of the amendments who can show that they "create[ ] a significant risk of prolonging his incarceration." These recent case developments support the Respondent's contention that exhaustion should not be excused.  However, as McCoy filed his petition several months prior to <u>Defoy</u> and <u>Cimaszewski</u>, and given the "considerable jurisprudential confusion" at the time surrounding this issue, it is unreasonable to expect that he could have predicted the Pennsylvania Supreme Court's decision.  <u>Defoy v. McCullough</u>, 393 F.3d 439, 446 (3d Cir. 2005)(Weis, J., concurring).

Nonetheless, the question of exhaustion need not be resolved as the claims presented by McCoy are clearly without merit.³  <u>See</u> 28 U.S.C. § 2254(b)(2)(a federal court can deny a

---

³ Recently, the Supreme Court indicated that an ex post facto claim of the nature presented here may be pursued in an action under 42 U.S.C. § 1983.  <u>Wilkinson v. Dotson</u>, 125 S. Ct. 1242 (2005).  Although Justice Scalia, in a concurring opinion in which Justice Thomas joined, suggested that habeas corpus would not be available to pursue such a claim, the majority ruling did not resolve this issue. Whether habeas corpus relief is or is not available with respect to the claims advanced by McCoy is not presently before this Court.  In any event, the issue is academic because the underlying claims lack merit whether brought in habeas or under § 1983.

(continued...)

5

habeas petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

### III. **Standard of Review**

28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . .

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Specifically, when a federal law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). See generally, Gattis v. Snyder, 278 F.3d 222, 234 (3d Cir. 2002); Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001). The Court has held that the "contrary to"

---

[3](...continued)

and "unreasonable application" clauses of § 2254(d)(1) have independent meaning.  <u>Williams v. Taylor</u>, 529 U.S. 362, 404-405 (2000).  As explicated in <u>Bell</u>, 535 U.S. at 694:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . . .

Resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not.  <u>See</u> 28 U.S.C. § 2254(e)(1).

In summary, the appropriate inquiry for federal district courts in reviewing the merits of § 2254 petitions is whether the state court decisions applied a rule different from the governing law set forth in United States Supreme Court cases, decided the case before them differently than the Supreme Court has done on a set of materially indistinguishable facts, or unreasonably applied Supreme Court governing principles to the facts of the particular case.  State court factual findings may be set aside only if rebutted by clear and convincing evidence. This Court will address McCoy's claims in accordance with the above standards.

7

**IV.**     **<u>Ex Post Facto</u>**

Petitioner asserts that the denials of parole were premised on the undefined fair administration of justice standard and therefore did not comply with due process.  McCoy explains that the Parole Board violated the Ex Post Facto Clause of the United States Constitution by applying 1996 amendments to Pennsylvania's parole regulations in his case.

In December 1996, the Pennsylvania state legislature amended the law governing parole (61 Pa. Stat. § 331).   Under the modified criteria, protection of the safety of the public is the paramount condition which must be considered in determining parole eligibility.  Additionally, membership on the Parole Board was increased from five (5) to nine (9) members with a majority vote required for parole.  Previously, an inmate applicant needed only a majority vote of three (3) to obtain parole.

A new law or policy violates the Ex Post Facto Clause of the United States Constitution when it is applied to events which occurred prior to its enactment and disadvantages the offender affected by it.  <u>Weaver v. Graham</u>, 450 U.S. 24, 29 (1981).  The Ex Post Facto Clause applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" <u>Mickens-Thomas v. Vaughn</u>, 321 F.3d 374, 383 (3d Cir. 2003)("<u>Mickens-Thomas I</u>"), <u>quoting</u>, <u>California Dept. of</u>

8

Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995). "One function of the *Ex Post Facto* Clause is to bar enactments, which by retroactive operation increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000). A retroactive application of a change in parole laws can constitute an ex post facto violation. See id. at 250.

As previously noted, in 1996 the Pennsylvania legislature amended its parole law by setting forth the public policy statement of the Commonwealth concerning parole. Specifically, the 1996 legislation decreed that "the board shall first and foremost seek to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[4] The former § 331.1 made no mention of pubic safety, and in fact declared the public policy of the Commonwealth to be that parole would be a period of

---

[4] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the *fair administration of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).

rehabilitation of an inmate for his restoration to society.[5]

It is noted that the Petitioner was initially denied parole on April 2, 2001. His second unsuccessful parole review transpired in April, 2002. A revised decision was issued on August 23, 2002 which added reasons for the denial of parole to McCoy. More recently, McCoy was denied parole for a third time on June 1, 2004 and for a fourth time on August 30, 2005. All of those proceedings clearly transpired after the December, 1996 enactments.

In <u>Mickens-Thomas I</u>, the Court of Appeals for the Third Circuit addressed the ex post facto ramifications of the parole amendments. The Third Circuit noted that the essential inquiry was "whether, <u>in</u> <u>practice</u>, the new language has altered the fundament for reviewing parole applications." <u>Id</u>. at 384 (emphasis added). It concluded that the 1996 amendments as applied to Mickens-Thomas constituted an Ex Post Facto Clause

---

[5] Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

violation, noting that there was "significant evidence that [the Board] acted upon policies that were established after [the petitioner's] crime and conviction." Id. at 393. The Third Circuit explained:

> [A] parole decision that fails to address any of the criteria mandated by Board policy, such as institutional recommendations, willingness to undergo counseling and educational achievement, and instead utterly ignores all factors counseling in favor of release, falls outside the realm of the legitimate exercise of discretion under the pre-1996 policies. Inference instructs us that the Board inappropriately relied on policies implemented in 1996, rather than the parole policies in place at the time of Thomas's crime and conviction.

Id. at 387.

The Court noted that "[t]he Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." Id. However, the Third Circuit recognized that a recent decision of the Pennsylvania Supreme Court, Winklespecht v. Pa. Bd. of Prob. & Parole, 571 Pa. 685, 813 A.2d 688 (2002), concluded that the amended § 331.1 did not require the Board to place the greatest weight on considerations of public safety. Id. Unfortunately, the Winklespecht decision was announced after the denial of parole to Mickens-Thomas.

With respect to Mickens-Thomas and other habeas applicants who were denied parole after adoption of the 1996 changes and

11

before Winklespecht clarified the fact that the amendment did not change the administration of the policies, the appropriate remedy for an Ex Post Facto violation has been to remand the matter to the Board for reconsideration, applying the pre-1996 law.[6]  Hart v. Pa. Bd. of Prob. & Parole, 2003 WL 22838381 (3d Cir. Nov. 23, 2003); see also McLaurin v. Larkins, 2003 WL 22147497 (3d Cir. Sept. 18, 2003); Hollawell v. Gillis, 65 Fed. Appx. 809, 2003 WL 1919371, at *8 (3d Cir. April 23, 2003).

In cases where parole was denied after Winklespecht, habeas relief has been denied where it was evident that the denial of parole was based upon factors that would have resulted in the denial of parole under pre-1996 policies and practices. See Grob v. Pa. Bd. of Prob. & Parole, Civil No. 3:CV-04-0275, slip op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); Sphar v. Pa. Bd. of Probation & Parole, Civil No. 3:CV-04-1145, slip op. at 7 (M.D. Pa. Oct. 29, 2004)(Munley, J.).

Recently, the Third Circuit stated that in order to obtain relief on an ex post facto claim, a Pennsylvania state prisoner must show "*both* a retroactive change in law or policy *and* that this change caused individual disadvantage" by increasing the risk of punishment. Richardson v. Pennsylvania Parole Board, 2005 WL 2155505 *1 (3d Cir. Sept. 8, 2005)(emphasis in

---

[6] Following remand in Mickens-Thomas I, the Board again denied parole. The Third Circuit found that the Board had exhibited "willful noncompliance, bad faith, and . . . vindictiveness" sufficient to direct the release of the petitioner. Mickens-Thomas v. Vaughn, 355 F.3d 294, 310 (3d Cir. 2004)("Mickens-Thomas II").

original).  In Richardson, the Court added that it was not sufficient for a prisoner to merely "show that the Board relied on a new law or policy." Id. at *9.  Rather, the inmate must show that he was personally disadvantaged.

The June 1, 2004 and August 30, 2005 parole decisions in the present case clearly came after the Pennsylvania Supreme Court had decided Winklespecht.  Based on a review of the record, it was not the Parole Board's application of harsher laws or guidelines that caused those denials of parole.  The Parole Board's most recent decisions specifically enumerated legitimate reasons for denying parole that would have also warranted the denial of parole prior to the 1996 amendments.

Second, the procedural changes cited by McCoy, the increase in Parole Board memberships and accompanying increase in the number of votes needed to obtain parole, are not laws for purposes of the Ex Post Facto Clause. Collins v. Youngblood, 497 U. S. 37, 47 (1990).  Furthermore, unlike Mickens-Thomas I, the Parole Board had the benefit of Winklespecht prior to conducting McCoy's two most recent parole reviews.  The Parole Board's last two written decisions listed a series of significant reasons for denying Petitioner parole which stress, not public safety issues, but rather the Parole Board's perception of his suitability for release.

The Parole Board's June 1, 2004 and August 30, 2005 decisions denying parole both similarly state that the Petitioner had been interviewed and a review of his file had

13

taken place.  See Doc. 20, Exhibit E and Doc. 34, Exhibit A. The June 1, 2004 decision notes that McCoy was a prior sex offender.  Both written decisions indicate that reports, evaluations, and assessments regarding Petitioner's physical, mental, and behavioral condition and history had been considered.  Each of the matters are included in § 331.19 as factors to be considered in parole decisions.[7]  Noteworthy, is the Parole Board's indication that Petitioner should have continued participation in a sex offender treatment program.

There is no indication that either public safety or the fair administration of justice were controlling factors in the latest decisions to deny McCoy parole.  It is apparent to this Court that Petitioner would have been denied parole regardless of the subsequent enactment of the 1996 amendments to the Parole Act.  As required under Richardson, McCoy has not shown that he was personally disadvantaged by the use of the 1996 amendments. Since a violation of the Ex Post Facto Clause has not been established, Petitioner's ex post facto claim shall be

---

[7] § 331.19 provides in relevant part:

> It shall be the duty of the board . . . to consider the nature and circumstances of the offense committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner. . . . The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history, . . . his complete criminal record, as far as the same may be known, to be reported and investigated.

dismissed.

## V. Due Process

McCoy's remaining contention is that the Parole Board violated due process because it failed to provide him with a non-cryptic statement of the reasons for the decision to deny parole. See Doc. 1, ¶ 9. The remainder of his due process arguments mirror his ex post facto arguments and have already been addressed by this Court.

As noted above, the Petitioner was clearly given a written meaningful statement of reasons for its action. See Greene v. United States Parole Comm'n, 749 F. Supp. 650, 654 (M.D. Pa. 1990). Consequently, McCoy's claim that the Parole Board's denial was set forth in a cryptic statement lacks merit. An appropriate Order will enter.

AND NOW, THEREFORE, THIS 10th DAY OF JANUARY, 2006, IT IS HEREBY ORDERED THAT:

1. Petitioner's motion to supplement and compel production (Doc. 34) is granted in part. The Parole Board's August 30, 2005 decision will be taken into consideration.

2. The petition for writ of habeas corpus is denied.

3. The Clerk of Court is directed to close the case.

4. Based on the Court's determination herein, there

15

is no basis for the issuance of a certificate of appealability.

        <u>S/Richard P. Conaboy</u>
        RICHARD P. CONABOY
        United States District Judge